JS 44 (Rev. 06/17)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
Anit Patel and manish Patel

## DEFENDANTS
Narendra Lakhani, Sonali Mody, Darshan Lakhani, Lakhani Assocs., LLC, Cole Schotz, P.C, Rabinowitz, Lubetkin & Tully, LLC, et al.

(b) County of Residence of First Listed Plaintiff: **Salem County**
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant: **Somerset County**
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

(c) Attorneys *(Firm Name, Address, and Telephone Number)*
Weisberg Law
7 S. Morton Avenue, Morton, PA 19070
610-690-0801

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☐ 1 U.S. Government Plaintiff
- ☒ 3 Federal Question (U.S. Government Not a Party)
- ☐ 2 U.S. Government Defendant
- ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*
Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | **PERSONAL PROPERTY** | **LABOR** | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 371 Truth in Lending | ☐ 720 Labor/Management Relations | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/Exchange |
| ☐ 196 Franchise | | ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical Leave Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| | | | | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| | | | | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information Act |
| ☐ 210 Land Condemnation | ☒ 440 Other Civil Rights | **Habeas Corpus:** | ☐ 791 Employee Retirement Income Security Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 896 Arbitration |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | | |
| ☐ 240 Torts to Land | ☐ 443 Housing/Accommodations | ☐ 530 General | | | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from Another District *(specify)*
- ☐ 6 Multidistrict Litigation - Transfer
- ☐ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
Violation of Plaintiff's Federal Civil Rights under 42 U.S.C. Section 1983

Brief description of cause:
Acting under color of state law, Defendants deprived Plaintiffs of property without due process

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND: ☐ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY
*(See instructions)*
JUDGE
DOCKET NUMBER

DATE: 5-04-2018
SIGNATURE OF ATTORNEY OF RECORD: MBW

**FOR OFFICE USE ONLY**

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
(TRENTON VICINAGE)

| | |
|---|---|
| **ANIL PATEL**<br>263 North River Drive<br>Pennsville, NJ 08070<br><br>And<br><br>**MANISH PATEL**<br>105 Dansfield Lane<br>Chadds Ford, PA 19317<br><br>           Plaintiffs,<br><br>v.<br><br>**NARENDRA LAKHANI**<br>30 Kristy Lane<br>Watchung, NJ 07069<br><br>And<br><br>**SONALI MODY**<br>30 Main Street, Apt. 9F<br>Brooklyn, NY 11201<br><br>And<br><br>**DARSHAN LAKHANI**<br>2728 Thomson Avenue, Apt. 814<br>Long Island City, NY 11101<br><br>And<br><br>**LAKHANI ASSOCIATES, LLC**<br>30 Kristy Lane<br>Watchung, NJ 07069<br><br>And<br><br>**COLE SCHOTZ, P.C.**<br>25 Main Street<br>Hackensack, NJ 07601 | Civil Action No.:<br><br><br>**JURY OF TWELVE (12) JURORS DEMANDED** |

|  |  |
|---|---|
| And | : |
| **RABINOWITZ, LUBETKIN & TULLY, LLC**<br>293 Eisenhower Parkway, Suite 100<br>Livingston, NJ 07039 | :<br>:<br>:<br>: |
| And | : |
| **JONATHAN I. RABINOWITZ**<br>17 Woodhill Drive<br>Maplewood, NJ 07040 | :<br>:<br>: |
| Defendants. | : |

## CIVIL ACTION COMPLAINT

### I.   JURISDICTION & VENUE

1. This Honorable Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331 for violations of federal law, specifically 42 U.S.C. § 1983; Plaintiffs seek damages against Defendants for committing acts, under color of state law, with the intent and purpose of depriving Plaintiffs of rights secured under the Constitution and laws of the United States.

2. Venue appropriately lies in this District as the events giving rise to Plaintiffs' claim occurred within this District; the property which was unconstitutionally and illegally taken from Plaintiffs was situated within this District; and multiple Defendants maintain a principal place of business with this District.

3. Camden is the proper Vicinage for this action as, *inter alia,* the property which was unconstitutionally and illegally taken from Plaintiffs was situated with this Vicinage.

### II.   PARTIES

4. Plaintiff, Anil Patel, is an adult individual, residing at the above-captioned address.

5. Plaintiff, Manish Patel, is an adult individual, residing at the above-captioned address.

6.    Defendant, Narendra Lakhani, is an adult individual residing at the above-captioned address.

7.    Defendant, Sonali Mody, is an adult individual residing at the above-captioned address.

8.    Defendant, Darshan Lakhani, is an adult individual residing at the above-captioned address.

9.    Defendant, Lakhani Associates, LLC, is a limited liability company existing by virtue of and operating under the laws of the State of New Jersey, with its principal place of business located at the above-captioned address. At all material times, Lakhani Associates, LLC acted by and through its agents, servants, partners, associates, workers, and/or employees, all of whom acted within the course and scope of their authority and/or employment, and in furtherance of Lakhani Associates, LLC's business.

10.   Defendant, Cole Schotz, P.C. ("Cole Schotz"), is a professional corporation existing by virtue of and operating under the laws of the State of New Jersey, with its principal place of business located at the above-captioned address. At all material times, Cole Schotz acted by and through its agents, servants, partners, associates, workers, and/or employees, all of whom acted within the course and scope of their authority and/or employment, and in furtherance of Cole Schotz's business.

11.   Defendant, Rabinowitz, Lubetkin & Tully, LLC ("Rabinowitz Lubetkin" or the "Receiver's Law Firm"), is a limited liability, corporate law firm existing by virtue of and operating under the laws of the State of New Jersey, with its principal place of business located at the above-captioned address. At all material times, Rabinowitz Lubetkin acted by and through its agents, servants, partners, associates, workers, and/or employees, all of whom acted within

the course and scope of their authority and/or employment, and in furtherance of Rabinowitz Lubetkin's business.

12.     Defendant, Jonathan I. Rabinowitz, Esquire, is an adult individual and licensed attorney, residing at the above-captioned address.

### III.    OPERATIVE FACTS

#### *THE LAKHANIS' AND THE PATELS' BUSINESS RELATIONSHIP*

13.     In or about 2005, Defendants, Narendra Lakhani, Sonali Mody and Darshan Lakhani (collectively, the "Lakhanis") and Plaintiffs, Anil Patel and Manish Patel (collectively, the "Patels") formed a new entity, Brix Hospitality, LLC ("Brix Hospitality").

14.     At all material times, the Lakhanis collectively held fifty-one percent (51%) of the shares of Brix Hospitality while the Patels collectively held the remaining forty-nine percent (49%) of the shares of Brix Hospitality.

15.     The Lakhanis and the Patels formed Brix Hospitality for the purpose of purchasing a Comfort Inn hotel located in Long Island City, New York (the "Long Island Comfort Inn"), the purchase which successfully occurred in 2005.

16.     Due to the Patels' efficacious management of the Long Island Comfort Inn, the value of the Inn drastically increased over a short period of time. In fact, in less than three years, Brix Hospitality sold the Inn at a profit of approximately $8,500,000.

17.     Due to the Patels' efficacious management of the Long Island Comfort Inn, the Lakhanis urged the Patels to continue operating Brix Hospitality.

18.     Per the Lakhanis' urging, Brix Hospitality used the proceeds of the Long Island Comfort Inn sale to purchase two properties: the Kenilworth Inn in Kenilworth, New Jersey ("Kenilworth Inn"), and the Comfort Suites in Laurel, Maryland ("Laurel Comfort Suites").

19. To effectuate the sale, Brix Hospitality created two wholly-owned subsidiaries, Brix Kenilworth, LLC ("Brix Kenilworth") (to purchase the Kenilworth Inn) and Brix Laurel, LLC ("Brix Laurel") (to purchase the Laurel Comfort Suites). The Lakhanis were the majority partners of both subsidiaries, Brix Kenilworth and Brix Laurel; Narendra Lakhani served as the managing member of Brix Hospitality and both subsidiaries.

20. Kenilworth Inn was purchased by Brix Kenilworth on April 9, 2008; Laurel Comfort Suites was purchased by Brix Laurel on April 2, 2008.

21. The operating agreements for Brix Kenilworth and Brix Laurel provided that the Patels would manage and operate Kenilworth Inn and Laurel Comfort Suites on a day-to-day basis.

22. Due to their long-standing relationship with non-party, Sun National Bank ("Sun Bank"), built over the course of two decades during which the Patels timely repaid Sun Bank more than $50,000,000 in loans, the Patels arranged for the financing of Kenilworth Inn on behalf of Brix Kenilworth with Sun Bank.

23. Because Brix Kenilworth agreed to pledge Kenilworth Inn as collateral for the loan from Sun Bank, Anil Patel and Manish Patel each agreed to personally guarantee any portion of the loan not otherwise satisfied by the sale, transfer or other disposition of Kenilworth Inn in the event of a loan default.

24. Further, the Brix Kenilworth operating agreement mandates that any judgment against Brix Kenilworth would be allocated between the members of Brix Kenilworth in accordance with the members ownership interests.

### BRIX KENILWORTH DEFAULTS ON THE LOAN

25. In or around 2010, Brix Kenilworth defaulted on its loan with Sun Bank. Although the cause of the default it disputed, it is not relevant to Plaintiffs' claims herein.

26.  Following the default, the Lakhanis directed Brix Kenilworth not to make any further payments to Sun Bank and to not engage in any forbearance agreement with Sun Bank. Further, the Lakhanis prevented Plaintiffs from making any personal payments on the loan that Plaintiffs personally guaranteed.

27.  As a result, Sun Bank pursued a collection action against Brix Kenilworth and Plaintiffs, as well as a separate foreclosure action on the collateral pledged as security on the defaulted note i.e., the Kenilworth Inn.

28.  In or around April 2010, Sun Bank appraised the Kenilworth Inn at approximately $11,900,000.

29.  On or about September 26, 2011, in the collection action (Superior Court of New Jersey, Law Division, Somerset County at Docket No. L-1778-10) ("Collection Action"), judgment was entered on behalf of Sun Bank and against Brix Kenilworth and Plaintiffs in the amount of $9,747,461.90 ("Sun Bank Judgment").

30.  The Kenilworth Inn was valued at approximately $2,152,500 more than the default judgment; as such, the foreclosure action would result in the judgment being fully satisfied with a significant remainder left over.

### *The Lakhanis' Acquisition of the Sun Bank Judgment and the Kenilworth Inn Resulting in the Uncertain Sum of the Sun Bank Judgment*

31.  Sometime prior to December 9, 2011, the Lakhanis formed a company called Lakhani Associates LLC ("Lakhani Associates"), wholly owned by the Lakhanis.

32.  In or about December 2011, Lakhani Associates purchased Sun Bank's loan to Brix Kenilworth without notice to the Patels. As part of the purchase of the loan to Kenilworth Inn, Sun Bank assigned to the Lakhanis the Sun Bank Judgment obtained against Brix Kenilworth and the Patels in the Collection Action.

33. Additionally, on or about December 20, 2012, the Lakhanis directed Brix Kenilworth, which they controlled, to convey to the Lakhanis the Kenilworth Inn collateral then subject to the pending Foreclosure Action. The conveyance was affected by a deed in lieu of foreclosure, which was also completed without notice to the Patels (as required under the Brix Kenilworth operating agreement).

34. The Patels did not learn of the Lakhanis' purchase of the Sun Bank Judgment in the Collection Action, nor the conveyance of the Kenilworth Inn collateral subject to foreclosure until after the purchase and transfer were completed.

35. For reasons not pertinent to the material issues in this case, the Patels dispute the propriety of the Lakhanis' purchase of the Sun Bank Judgment and receipt by deed transfer of Kenilworth Inn.

36. However, it is undeniable that the value of the Kenilworth Inn pledged as collateral on the loan in default was required to be credited against the Sun Bank Judgment, upon the transfer of the Kenilworth Inn to the Lakhanis.

37. In fact, the Lakhanis had personal knowledge that the Kenilworth Inn pledged as collateral on the loan in default was required to be credited against the Sun Bank Judgment as the Lakhanis had personally witnessed the same set-off be applied when the Brix Laurel defaulted on its Sun Bank loan.

38. The conveyance of the Kenilworth Inn collateral to the Lakhanis by deed in lieu of foreclosure satisfied the Sun Bank Judgment as the value of the Kenilworth Inn, upon information and belief – specifically the Sun Bank's 2010 independent appraisal – significantly exceed the value of the Sun Bank Judgment.

39. Nonetheless, the sum of the Sun Bank Judgment is and will remain uncertain until the credit of the value of the Kenilworth Inn collateral is completed; i.e. execution on the uncredited Sun Bank Judgment could not proceed until after the Sun Bank Judgment was credited by the fair market value of the Kenilworth Inn collateral to avoid "double recovery," prohibited by law, on the uncredited Judgment.

### *LAKHANIS' SCHEME TO TAKE THE PATELS' PROPERTY BASED ON THE UNCREDITED SUN BANK JUDGMENT AND WITHOUT DUE PROCESS*

40. At all material times, the Lakhanis knew the judgment Sun Bank sold to the Lakhanis was satisfied by the deed in lieu of foreclosure that conveyed Kenilworth Inn to the Lakhanis, *or, alternatively*, that the Sun Bank Judgment needed to be reduced by the value of the Kenilworth Inn collateral before execution could proceed on the Sun Bank Judgment.

41. Thus, at all material times, the Lakhanis understood that they could not lawfully execute on the Sun Bank Judgment until the value of the Kenilworth Inn collateral was first credited against the Sun Bank Judgment.

42. Nevertheless, after securing the Sun Bank Judgment and title to Kenilworth Inn through deed in lieu of foreclosure, the Lakhanis misrepresented in the Collection Action and other state court actions that the Sun Bank Judgment is final and for a sum certain.

43. Further, in contravention of the Brix Kenilworth operating agreement, the Lakhanis pursued the Plaintiffs for the full amount of the Sun Bank Judgment, despite the prior agreement that the members of Brix Kenilworth would share any judgment against Brix Kenilworth in proportion with their membership interests.

44. Prior to September 2016, the Lakhanis, through their then-counsel, secured numerous writs of execution against the Patels on the false representation that the Sun Bank Judgment is final and for a sum certain.

45. Despite multiple requests from Plaintiffs, the Lakhanis, through their then-counsel, have opposed the Patels' efforts to secure a credit against the amount of the Sun Bank Judgment based on the fair market value of the Kenilworth Inn collateral (and have ignored the Brix Kenilworth operating agreement).

### *LAKHANIS INVOLVE A COURT-APPOINTED RECEIVER*

46. In or around August 2016, the Lakhanis, through their counsel, Cole Schatz, filed a motion in New Jersey state court to appoint a receiver to aid them in their unlawful collection efforts against the Patels on the Lakhanis' uncredited Sun Bank Judgment.

47. Upon information and belief, Cole Schatz, in addition to the Lakhanis, was aware that the judgment Sun Bank sold to the Lakhanis was satisfied by the deed in lieu of foreclosure that conveyed Kenilworth Inn to the Lakhanis, *or, alternatively*, that the Sun Bank Judgment needed to be reduced by the value of the Kenilworth Inn collateral before execution could proceed on the Sun Bank Judgment.

48. Thus, upon information and belief, at all material times, Cole Schatz, in addition to the Lakhanis, understood that it could not lawfully execute on the Sun Bank Judgment until the value of the Kenilworth Inn collateral was first credited against the Sun Bank Judgment.

49. In or around November 2016, based on the Lakhanis' and Cole Schotz's false representations that the Sun Bank Judgment against the Patels remains outstanding for a sum certain, Presiding Judge Thomas C. Miller of the Superior Court of New Jersey, Somerset County, appointed Jonathan I. Rabinowitz ("Rabinowitz" or the "Receiver") as a receiver over the Patels' property and assets to aide the Lakhanis in their collection efforts against the Patels based on the uncredited Sun Bank Judgment.

50. The Receiver is paid by the Lakhanis, as is the law firm in which the Receiver is a partner, Defendant, Rabinowitz, Lubetkin & Tully, LLC ("Rabinowitz Lubetkin" or the "Receiver's Law Firm").

### ONGOING NEW JERSEY STATE COURT LITIGATION

51. In a separate pending state court action involving claims of mismanagement asserted by the Lakhanis and the Patels against each other (the "New Jersey Action"), the Patels asserted twenty (20) counterclaims against the Lakhanis alleging, *inter alia*, the Lakhanis: violated multiple duties and agreements with the Patels; improperly usurped and destroyed the Patels' business opportunities; defamed the Patels; and, violated the New Jersey and federal RICO laws ("Plaintiffs' Counter Claims").

52. The Patels have a good faith belief that the aggregate recovery for their counterclaims against the Lakhanis has an upper range value of eight figures.

### DEFENDANTS' UNCONSTITUTIONAL STATE-ACTION

53. Lakhanis, operating through Cole Schotz, the Receiver, and the Receiver's Law Firm, directed that Plaintiffs' Counter Claims be executed upon.

54. Upon information and belief, the Receiver and his Law Firm, in addition to Cole Schotz and the Lakhanis, were aware that the judgment Sun Bank sold to the Lakhanis was satisfied by the deed in lieu of foreclosure that conveyed Kenilworth Inn to the Lakhanis, *or, alternatively*, that the Sun Bank Judgment needed to be reduced by the value of the Kenilworth Inn collateral before execution could proceed on the Sun Bank Judgment.

55. Thus, upon information and belief, at all material times, the Receiver and his Law Firm, in addition to Cole Schotz and the Lakhanis, understood that they could not lawfully execute on the Sun Bank Judgment until the value of the Kenilworth Inn collateral was first credited against the Sun Bank Judgment.

56. Nonetheless, on or about June 1, 2017, the Lakhanis, operating through Cole Schotz, the Receiver, and the Receiver's Law Firm, transferred the Plaintiffs' Counter Claims (against the Lakhanis) to the Lakhanis in exchange for the Lakhanis agreeing to reduce the Sun Bank Judgment, which the Lakhanis then-alleged exceed $10,500,000, by a mere $100,000.

57. Upon information and belief, neither the Receiver nor the Receiver's Law Firm took reasonable steps to ascertain the value of the Plaintiffs' Counter Claims.

58. In doing so, the Lakhanis, operating through Cole Schotz, the Receiver, and the Receiver's Law Firm, violated Plaintiff's Constitutional right to due process.

59. In order to meet the due process requirements of the U.S. Constitution, New Jersey provides that a judgment resulting from a defaulted and secured loan first be reduced to a deficiency judgment *before* execution efforts may proceed.

60. The coordinated collection activities of the Lakhanis, performed through Cole Schotz, the Receiver, and the Receiver's Law Firm, against the Plaintiffs have resulted in the deprivation of the minimum due process the Plaintiffs are due under the law by, *inter alia*, permitting the collection efforts to proceed despite Defendants':

   a. inability to endorse "the amount of the debt, damages, and costs actually due and to be raised by the writ, together with interest from the date of the judgment," each time the creditor seeks execution, as required by Rule 4:59-1;

   b. failure to comply with the information required to be conveyed in the contents of the writ of execution-including the precise amount of the outstanding judgment less any credits to which a debtor is entitled-and other process for the enforcement of judgments as required by Rule 4:59-1(b);

    c. failure to give sufficient notice to the Plaintiffs regarding the allegedly outstanding judgment and execution efforts, as required by Rule 4:59-1(h); and,

    d. timely pre- and/or timely post-deprivation hearings to raise and secure the credit to the Sun Bank Judgment the Plaintiffs are entitled to based on the value of the Kenilworth Inn collateral.

61. The coordinated collection activities of the Lakhanis, performed through Cole Schotz, the Receiver, and the Receiver's Law Firm, against the Plaintiffs have also deprived the Plaintiffs of the process the Plaintiffs otherwise would be entitled to as specified under New Jersey Rules 4:60-9 (Notice to Defendant), 4:60-9 (Time to Defend), and 4:60-11 (Opportunity to Vacate Writ or Levy).

62. The above New Jersey state laws and procedural rules are required to ensure minimum due process under the United States Constitution.

63. The coordinated collection activities of Lakhanis, operating through Cole Schotz, the Receiver, and the Receiver's Law Firm, resulted in unconstitutional state-action when the Receiver, acting under the color of state law, executed the judgment against Plaintiffs' Counter Claims.

64. The Patels have suffered grave consequences due to the Defendants' deprivations of the Plaintiffs' constitutional rights, which include, but are not limited to, the unlawful extinguishment of Plaintiffs' Counter Claims.

65. Moreover, the Plaintiffs have been denied their absolute right to challenge at a timely-held hearing whether the uncredited Sun Bank Judgment against them is satisfied (or subject to a substantial reduction), thereby not only resulting in the Plaintiffs being stripped of their property without constitutionally-guaranteed due process, but also allowing such deprivation to

indefinitely continue in the future, as there is no obstacle to Defendants continuing their unlawful execution process against the Plaintiffs for year to come.

66. Conversely, the Lakhanis, through the assistance of Cole Schotz, the Receiver, and the Receiver's Law Firm, have significantly benefitted themselves through the unlawful exploitation of a satisfied or less than final, sum-certain judgment, and a constitutionally-infirm execution process.

67. Further, the Lakhanis, through Cole Schotz, the Receiver, and the Receiver's Law Firm, have succeeded in insulating themselves from millions of dollars of liability for their wrongdoing to the Plaintiffs, as raised in the Plaintiffs' Counter Claims.

### IV.   COUNTS OF ACTION

#### COUNT I
#### Violation of Plaintiffs' Due Process Rights / Unlawful Taking
#### *Pursuant to* 42 U.S.C. § 1983
*Plaintiffs v. Defendants*

68. Plaintiffs incorporate by reference all prior paragraphs as if set forth at length herein.

69. Defendants violated Plaintiffs constitutional rights through unlawful execution efforts made prior to the defaulted and secured loan being reduced to a deficiency judgment.

70. As a result of Defendants' constitutional violations, Plaintiffs have suffered meaningful interference with their possession of property, including, but not limited to, the counterclaims unlawfully taken from the Patels in the Collection Action.

71. The seizure of Plaintiffs' property in the Collection Action was accomplished pursuant to a constitutionally-infirm execution procedure based on a judgment that Defendants know cannot support execution activities.

72. Because the minimum requirements of due process were bypassed by Defendants, Plaintiffs were denied both pre-seizure or prompt post-seizure notice and hearing otherwise required by the law.

73. Defendants' unlawful execution process violated well-settled jurisprudence in this area, so that Defendants reasonably could and should have understood that their actions violated Plaintiffs' constitutional rights.

74. The Lakhanis, through Cole Schotz, Receiver, and Receiver's Law Firm, enlisted the compulsive powers of the State of New Jersey to seize property by executing on an uncredited and likely satisfied judgment without a constitutionally- required hearing, thereby acting under color of state law and causing the use of the state's power of legal compulsion to unlawfully deprive Plaintiffs' of property.

75. Plaintiffs were deprived of their Property without just compensation and without just cause.

76. At all times material hereto, each Defendant acted under color of state law.

77. As a direct result of Defendants' constitutionally-violative execution activities, Plaintiffs have sustained and continue to sustain the following damages:

   a. Out-of-pocket expenses, including attorney's fees;

   b. Other monetary harm, including lost income and business opportunities, as well as recoveries based on the Patels' counterclaims against the Lakhanis; and

   c. Impairment of and harm to Plaintiffs' reputation, personal humiliation and embarrassment, mental anguish and suffering.

78. As a result of Defendants' outrageous conduct in deliberate and reckless disregard for Plaintiffs' constitutional rights, the imposition of punitive damages, along with an award of costs and attorneys' fees, is appropriate.

## V. PRAYER FOR RELEIF

WHEREFORE, Plaintiffs, Anil and Manish Patel, seek damages and legal and equitable relief in connection with Defendants' improper conduct, and specifically prays that the Court grant the following relief to the Plaintiff by:

a) declaring the acts and practices complained of herein to be in violation of Section 1983;

b) entering judgment against Defendants, individually, jointly and severally, and in favor of Plaintiffs in an amount to be determined including compensatory and punitive damages, pre-judgment interests, as well as other damages appropriate under Section 1983;

c) awarding Plaintiffs, the costs of suit, expert fees and other disbursements, and reasonable attorneys' fees; and,

d) granting such other and further relief as this Court may deem just, proper, or equitable including other equitable and injunctive relief.

Respectfully submitted,

**WEISBERG LAW**

*/s/ Matthew Weisberg*
Matthew B. Weisberg, Esquire
*Attorney for Plaintiffs*